# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff-Respondent,        Case No.  19-CV-361 MV/SCY
                                                 15-CR-214 MV

    vs.

**GERALD JAMES VIARRIAL**,

        Defendant-Movant.

## UNITED STATES' RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (CV DOC. 1)

The United States of America responds to Defendant-Movant Gerald James Viarrial's

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody (the "Motion") (CV Doc. 1)[1] as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2015, a federal grand jury returned a seven-count indictment charging

Defendant-Movant Gerald James Viarrial ("Viarrial") with, *inter alia*, three counts of assault with

a dangerous weapon in violation of 18 U.S.C. §§ 2, 1153 and 113(a)(3); assault resulting in serious

bodily injury in violation of 18 U.S.C. §§ 2, 1153 and 113(a)(6); and using, carrying, possessing

and brandishing a firearm during and in furtherance of a crime of violence, in violation of 18

U.S.C. § 924(c).[2] The 18 U.S.C. §§ 113(a)(3) and 924(c) charges resulted from a 2010 incident

---

[1]  The United States will cite to documents already on file with the Court in both the civil matter, 19-CV-361 MV/SCY, and the criminal matter, 15-CR-214 MV, by reference to the docket sheet, using the citation form, "CV Doc.__" or "CR Doc.__".

[2]  The indictment also charged Viarrial with two counts of abandonment or abuse of a child in violation of 18 U.S.C. §§ 13, 1153 and N.M.S.A. 1978, 30-6-1(D).  CR Doc. 2.  At trial Viarrial was acquitted on one of those

during which Viarrial, who took his family target-shooting in a desolate area of the Pojoaque Pueblo, lined up his eight family members[3] facing away from him, pointed a handgun at their bodies, and continuously threatened to kill them while shouting profanities and telling them that they were "worthless." PSR at ¶¶ 15, 24. At various times the family members saw Viarrial pointing the gun at them. Viarrial threatened his family for at least 15 minutes, holding them against their will and in fear of their lives, with no opportunity to call for help given the remoteness of their location. *Id*. The terrorizing event only came to an end when Viarrial was interrupted by a phone call. *Id*. at ¶¶ 15. While Viarrial's entire family suffered at his hand, the victims of these charged offenses were Jane Doe 1 and John Doe 1 and 2, Viarrial's common law wife and two sons. CR Doc. 2. The assault resulting in serious bodily injury charge resulted from a 2014 incident during which Viarrial grabbed John Doe 1 by the throat, pushed him against a wall, and strangled him to the point where he could not breathe [and may have blacked out]. PSR at ¶ 12. On December 16, 2015, a jury convicted Viarrial on the three §§ 113(a)(3) charges, the § 113(a)(6) charge, and the § 924(c) charge. CR Doc. 95.

On January 7, 2016, counsel for Viarrial, Todd Hotchkiss, filed a motion for withdrawal and for appointment of new counsel, citing a breakdown of trust between Viarrial and Mr. Hotchkiss, and that Viarrial sought new counsel. CR Doc. 99. On January 13, 2016, the Court granted the motion, and appointed CJA counsel Wayne Baker to represent Viarrial. CR Docs. 100 and 101. On June 30, 2016 Attorney Stephen Aarons filed a motion substituting himself in the

---

counts (CR Doc. 95 at 3), and the government dismissed the other by oral motion on the first day of trial. CR Doc. 106 at 5-6.

[3] Viarrial's family consisted of eight individuals, including his common-law wife and their seven children, who ranged in age from 6 months to 13 years old.

matter as Viarrial's new, retained counsel, and on July 7, 2016 the Court granted the motion. CR Docs. 113 and 114.

On January 26, 2017, District Judge Martha Vazquez sentenced Viarrial to 240 months of imprisonment, 120 months imposed as to convictions on the assault counts, and 120 months imposed as to the conviction for the firearm charge, said terms to run consecutively. CR Doc. 130 at 3. The Court entered the judgment on March 8, 2017. *Id.* The Tenth Circuit Court of Appeals affirmed the conviction on April 16, 2018, and issued its mandate on May 5, 2018. CR Doc. 156.

Viarrial's § 2255 Motion was filed with the Court on April 19, 2019. CV Doc. 1. The Court ordered the United States to respond to the Motion by September 30, 2019. CV Doc. 6.

Viarrial raises eight ineffective assistance of counsel claims with respect to his former counsel, Todd Hotchkiss, ranging from allegations of a Speedy Trial Act violation, admission of inadmissible hearsay, improper litigation of a jury note, failure to request a lesser-included offense instruction at trial, failure to challenge the predicate offense for his firearm conviction, and failure to raise a double jeopardy claim. Viarrial also alleges ineffective assistance from his counsel at time of sentencing, Stephen Aarons, for failing to investigate uncharged conduct alleged in the PSR, present evidence and witnesses, and investigate alleged government misconduct. There is no merit to any of Viarrial's claims as the government demonstrates below, and the Court should deny Viarrial's Motion without an evidentiary hearing.

## LEGAL STANDARD

An ineffective assistance of counsel claim requires a showing that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate that his counsel was constitutionally deficient, a defendant "must show that his counsel's representation fell below an objective standard

of reasonableness." *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) (quoting *Strickland*, 466 U.S. at 688). To demonstrate deficient performance under *Strickland*, a defendant must establish that his counsel's "identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Thus, to prove the first *Strickland* prong Viarrial must overcome the "strong presumption" that counsel's conduct was constitutionally effective. *Duvall v. Reynolds*, 139 F.3d 768, 777 (10th Cir. 1998). Additionally, scrutiny of counsel's performance must be highly deferential (*Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and must avoid the distorting effects of hindsight. *Miles*, 61 F.3d at 1474. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. The burden of proof is on the defendant to demonstrate that his counsel's performance was defective. *Strickland*, 466 U.S. at 712.

To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). When claiming ineffective assistance of counsel, it is not enough to make conclusory arguments or vague descriptions of the claimed deficient performance. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

This Court should deny Viarrial's Motion without an evidentiary hearing because Viarrial fails to prove that Mr. Hotchkiss was ineffective under either prong of the *Strickland* test.

Viarrial's unsupported assertions of ineffective assistance do not prove that Mr. Hotchkiss' performance fell below an objective standard of reasonableness (*Strickland*, 466 U.S. at 700), nor can he prove that he was prejudiced by Mr. Hotchkiss' representation. *Id.* For these reasons an evidentiary hearing is unwarranted. *See United States v. Kilpatrick,* 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant a hearing). *See also Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) (same) (*overruled on other grounds*). Applying these standards, Viarrial's Motion is without merit and should be denied.

## ARGUMENT

I. **VIARRIAL FAILS TO DEMONSTRATE THAT MR. HOTCHKISS' REPRESENTATION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS, AND THAT HE WAS PREJUDICED BY COUNSEL'S REPRESENTATION.**

A. **Claim One – Viarrial Has Not Shown Ineffective Assistance by Mr. Hotchkiss for an Alleged Failure by Counsel to Adequately Prepare for Trial, or for an Alleged Violation of the Speedy Trial Act.**

Failure to Prepare for Trial. Viarrial argues that "[t]he attorney was ineffective for not getting prepared for trial and as the record shows that there was also a Speedy Trial Violation under 18 U.S.C. § 3161(h)(7)(8)." Motion at 4. In support of the claim Viarrial cites to the Court's order denying counsel's motion to continue the December 15, 2015 trial date to suggest that Mr. Hotchkiss was not prepared for trial. *Id.*

Viarrial does not specify how Mr. Hotchkiss was unprepared for trial. It is well-settled that a defendant making an ineffective assistance claim must identify the specific "acts or omissions that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Conclusory allegations about the failure of counsel are insufficient to sustain a § 2255 petition. *See, e.g., United States v. Moser,* 570 F. App'x 800, 802 (10th Cir. 2014) (unpublished);

*United States v. Harris*, 404 F. App'x 264, 267 (10th Cir. 2010) (unpublished); *United States v. Rollow*, 357 F. App'x 966, 968 (10th Cir. 2009) (unpublished).  Even *pro se* parties must allege sufficient facts on which a recognized legal claim can be based, and conclusory allegations will not suffice.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Although Viarrial's *pro se* motion is liberally construed, the Court need not "fashion [Viarrial's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."  *Fisher*, 38 F.3d at 1147; s*ee also Young v. Wyoming Dep't of Corr. Medium Corr. Inst. Warden*, 674 F. App'x 836, 839 (10th Cir. 2017) (unpublished) (Where a defendant fails "to explain or offer any evidence how an investigation of the facts and sources of information recited in his habeas application had a genuine possibility of exonerating him," he does not rebut "the strong presumption that his counsel's actions fell within the wide range of reasonable professional assistance and could be considered sound trial strategy.").

The record reflects that counsel's basis for seeking another continuance was not because he had not adequately prepared for trial, but because his time to date had been expended in waging an effort at suppression of his client's statements and other evidence, to include engaging in significant briefing and arguing the motions, and in briefing a motion to sever counts.  *See* CR Docs. 22, 23, 30, 31, 36, 38, 42, and 65.  Counsel, therefore, sought a continuance to complete other preparations in advance of trial, to include filing a Fed. R. Evid. 404(b) motion, and conducting investigation with family members for his defense.  CR Doc. 43 at 3-4.  Counsel was also preparing for two other trials, one of which had been scheduled before Judge Vazquez to commence on same date as trial in this case.  *Id*. at 4.  When the Court denied counsel's motion he did not fail in completing these tasks, but fulfilled each one of them.  *See* Affidavit of Todd B.

Hotchkiss, attached hereto as Government's Exhibit 1.[4]  He filed a Rule 404(b) motion (CR Doc. 61), and engaged in significant pre-trial motion practice to include filing a motion in limine to exclude hearsay statements (CR Doc. 60), filing oppositions to six government motions in limine (CR Docs. 68-73), filing objections to government trial pleadings (CR Docs. 74-77), filing defense trial pleadings (CR Docs. 62-64), and replying to government responses to defense motions in limine (CR Docs. 81-82).  Counsel also filed a substantive pleading opposing the government's expert, Dean Hawley, M.D., who was engaged by the government to offer opinion testimony at trial regarding Viarrial's strangulation of John Doe 1.  CR Docs. 78, 53.  All defense briefs were filed timely, as were defense trial pleadings (jury instructions, voir dire, and exhibit lists).  CR Docs. 46, 51, 60-64, 68-78, 81-82.  Thus, there is no evidence that Mr. Hotchkiss was not prepared for trial, and the record plainly demonstrates otherwise.

Speedy Trial Act Violation.  Viarrial also alleges that "… the record shows that there was also a Speedy Trial Violation under 18 U.S.C § 3161(h)(7)(8)[5]."  Motion at 4.  This claim is barred as conclusory and without support as Viarrial fails to show how his counsel committed any Speedy Trial Act violation (*Fisher*, 38 F.3d at 1147).  In addition, the record disproves any such violation. The government was required to bring Viarrial to trial within 70 days of his first appearance in court which was on January 29, 2015.  18 U.S.C § 3161(h)(7)(c)(1); CR Doc. 5.  18 U.S.C § 3161(h)(7) excludes from the 70-day requirement any "period of delay resulting from a continuance granted by any judge … at the request of the defendant or his counsel … if the judge

---

[4]  The attached affidavit details counsel's rationale for requesting a continuance of the December 14, 2015 trial date and the strategy behind many of his decisions in preparing Viarrial's defense to include, *inter alia*, his efforts at pre-trial investigation regarding Viarrial's family members, and strategy for addressing Viarrial's denial of the choking incident involving John Doe 1.

[5]  Viarrial alleges that his counsel also violated 18 U.S.C § 3161(h)(8), which relates to a period of delay ordered by the Court upon application of a party that an official request has been made for evidence in a foreign country.  This subsection has no relevance to the issues of Viarrial's case as none of the evidence acquired was ever requested from a foreign country.

granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Such period of delay commences with the filing of any pretrial motion, including a motion to continue the trial, and concludes with the completion of the hearing on, or other prompt disposition of the motion. 18 U.S.C § 3161(h)(1)(D).

On March 6, 2015, Mr. Hotchkiss filed his first unopposed motion to continue the trial. CR Doc. 16. He filed three successive motions to continue (CR Docs. 18, 24, and 43), all of which, with the exception of the final motion, were granted, based on the Court's findings "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C § 3161(h)(7)(A). There were no lapses of time in the filing of the motions, so each subsequent motion was filed prior to the expiration of time for the continuance. Thus, the time for commencement of trial under 18 U.S.C § 3161(c)(1) was tolled entirely from March 6, 2015 through the first day of trial on December 14, 2015, and the government was well within its deadline within which to bring Viarrial to trial, as only 34 days had elapsed from the date of Viarrial's first appearance in Court on January 29, 2015 (CR Doc. 5), to the filing of his counsel's first motion to continue the trial date on March 6, 2015 (CR Doc. 16). Therefore, there was clearly no violation of the Speedy Trial Act. Viarrial's first claim fails.

B.    **Claim Two – Viarrial Has Not Demonstrated that Mr. Hotchkiss was Ineffective for Eliciting Testimony on Cross-Examination of Lieutenant Eric Johnson Regarding Viarrial's Choking of John Doe 1.**

Viarrial alleges that Mr. Hotchkiss was ineffective "by eliciting on cross-examination of Eric Johnson that Ricky said that petitioner had choked him to the point that he could not . . . It was not a fact for Ricky's statement because it was not detailed. Attorney elicited Ricky's out-of-court statement by not cross-examination of Eric Johnson for the squeezed to the point on the

throat where Ricky had a hard time breathing. Vol. 3 at 189." [sic]. Motion at 5. Viarrial's claim is unclear and, again, he advances conclusory allegations of Mr. Hotchkiss' ineffectiveness for eliciting this testimony, yet fails to provide any support for those allegations. While Viarrial suggests that the testimony was improper because it was "not detailed," he fails to explain how it lacked detail and how further detail could have assisted his case.

This claim relates to trial testimony provided by Pojoaque Police Lieutenant Eric Johnson who testified that John Doe 1 informed him that Viarrial had "put his hand on his throat and squeezed his throat to the point that he had a hard time breathing." CR Doc. 106 at 86:24-87:2. Viarrial takes issue with this testimony, but is not explicit in how Mr. Hotchkiss was ineffective for eliciting it in his cross-examination of Lt. Johnson, and how the testimony lacked detail. Indeed, the record is clear that Mr. Hotchkiss' line of questioning was in the attempt to elicit an admission from Lt. Johnson that he was uncertain after receiving information from John Doe 1 whether Viarrial had choked John Doe 1, and for that reason he did not include information about the incident in his report and determined that John Doe 1 and his brother should be interviewed at a safehouse, where the likelihood of securing reliable testimony was greater. *See id*. at 85-87. Hence, Mr. Hotchkiss' cross-examination was designed to **discredit** John Doe 1's statement that Viarrial had choked him, in the defense of Viarrial's case, and was, in no way, deficient. Moreover, Viarrial fails to show how he was prejudiced by this testimony. Lt. Johnson's testimony regarding John Doe 1's hearsay statements was not critical to the government's case. John Doe 1 testified at trial that Viarrial had choked him. *See* CR Doc. 107 at 174-176. There is no reason to believe the jury would have returned a different verdict in the absence of challenged testimony. Thus, Viarrial's second claim also fails.

**C.** **Claim Three – Viarrial's Claim that Mr. Hotchkiss was Ineffective for Failing to Object to Dr. Hawley's Testimony Regarding John Doe 1's Hearsay Statements Has No Merit.**

Viarrial alleges that Mr. Hotchkiss was ineffective for failing to object to Dr. Dean Hawley's testimony regarding John Doe 1's out of court statements about the choking incident, on the basis that this testimony was unduly prejudicial under Fed. R. Evid. 703. Motion at 6. Viarrial is wrong. He incorrectly asserts that his counsel raised no objection to this testimony. Mr. Hotchkiss filed a 16-page response to the government's Notice of Intent to Introduce Dr. Hawley's testimony, strenuously objecting to Dr. Hawley's proposed testimony on several grounds, to include that "[t]he very questionable probative value of the proposed testimony would be substantially outweighed by the danger of unfair prejudice." *See* CR Doc. 78 at 8-9, and 12-13. Counsel also argued against the proposed testimony in a pretrial motions hearing on December 10, 2015. CR Doc. 91, 8-20. The Court rejected counsel's argument and permitted Dr. Hawley to testify, finding that there was sufficient corroborating evidence of the strangulation. CR Doc. 91 at 20-21.

Rule 703 permits an expert witness to base his testimony upon facts or data that are hearsay, provided that those facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703; *Wilson v. Merrell Dow Pharms., Inc.*, 893 F.2d 1149, 1153 (10th Cir. 1990). Dr. Hawley, a forensic pathologist, was engaged by the government to render an opinion on whether Viarrial's action in strangling John Doe 1 resulted in a substantial risk of death, which was part of the proof for a violation of assault resulting in serious bodily injury. 18 U.S.C. §§ 113(a)(6), 1365(h)(3); and CR Doc. 92 at 27 ("The term serious bodily injury" means bodily injury which involves- (A) a substantial risk of death …"). To render his opinion Dr. Hawley reviewed the law enforcement reports containing

John Doe 1's hearsay statements to police. In his capacity as a forensic pathologist he would have regularly reviewed such law enforcement reports containing hearsay statements from victims and witnesses.

The Tenth Circuit has held that when an expert testifies about such a statement, it is not offered for the truth of the matter asserted in the statement, but to show how the expert arrived at the opinion and, therefore, is not considered hearsay. *Richie v. Mullin*, 417 F.3d 1117, 1125 (10th Cir. 2005), *citing Wilson,* 893 F.2d at 1153. In this case, Dr. Hawley's testimony reasonably relied on the statements of John Doe 1 to law enforcement to form an opinion on whether Viarrial's actions resulted in a substantial risk of death to John Doe 1 for the § 113(a)(6) charge. Dr. Hawley's testimony regarding the choking incident was not offered to prove the truth of the matter asserted – that Viarrial choked John Doe 1 – but, instead, was offered for the limited purpose of apprising the jury of the basis of his opinion. *Id*. Thus, the statement was not inadmissible hearsay, and its probative value substantially outweighed its prejudicial effects. Moreover, Viarrial fails to show how he was prejudiced by Dr. Hawley's testimony regarding John Doe 1's statement about the choking incident. Again, John Doe 1 testified at trial and Mr. Hotchkiss was able to cross-examine him. *See* CR Doc. 107 at 196. Thus, Defendant was not prejudiced by the alleged error and this claim also fails.

### D.    Claim Four – Viarrial Does Not Prove Ineffective Assistance by Mr. Hotchkiss for the Manner in Which he Litigated the Jury Note.

Viarrial next argues that Mr. Hotchkiss was ineffective in how he litigated a jury note returned during deliberations wherein the jury questioned the meaning of the term "mental faculty" in jury instruction no. 23. Motion at 8. Viarrial again offers another unclear, conclusory allegation with no support for how Mr. Hotchkiss' actions were ineffective. As a result, the claim is insufficient and should be denied.

Jury Instruction No. 23 was the "elements" instruction for the assault resulting in bodily injury charge involving John Doe 1, which required the government to prove that Viarrial struck or strangled John Doe 1 and as a result of that assault John Doe 1 suffered serious bodily injury which involves:

    (A) a substantial risk of death;
    (B) extreme physical pain;
    (C) protracted and obvious disfigurement; or
    (D) protracted loss or impairment of the function of a bodily member, organ or **mental faculty**.

CR Doc. 92 at 27.

During deliberations, the jury submitted the following question to the Court: "On Jury Instruction #23, what is included in the term "mental faculty?" CR Doc. 93 at 1. The parties produced a joint answer, approved by the Court, which stated, "Mental faculty," as that term is used in Instruction No. 23, should be defined by the jury in light of its common sense and experience." *Id.* at 2. Viarrial does not explain how this response was deficient or the result of ineffective assistance. He only states that the jury's note suggests that some jurors were considering convicting on the ground that Ricky suffered such (mental) impairment, as further supported by an earlier note inquiring whether anything was wrong with John Doe 1. Motion at 8. If the jury found that all elements of the § 113(a)(6) offense were met and the serious bodily injury John Doe 1 suffered included loss or impairment of mental faculty, the jury was well within its authority to convict Viarrial for such violation, even if injury were not physical (serious bodily injury includes "protracted loss or impairment of the function of a **bodily member, organ or mental faculty**" (18 U.S.C. §§ 113(a)(6), 1365(h)(3); and CR Doc. 92 at 27)). Moreover, it was reasonable for Mr. Hotchkiss and government counsel to request that the Court respond to the jurors' question that "mental faculty" should be defined in light of their common sense and

experience. This is not an uncommon response under circumstances where jurors have questioned the definitions of terms in jury instructions. In *Sairras v. Florida Department of Corrections*, 496 F.App'x 28, 34 (11th Cir. 2012), the court rejected the petitioner's claim that his counsel was ineffective for failing to object to the court's instruction for the jurors to use their experience and common sense to interpret the term, "distribution" when responding to the jury's request for a definition of the term, finding that the term was clear, and not confusing or misleading. Likewise, in *United States v. Valenciano*, 2006 WL 8443577, at *6 (D.N.M. Oct. 24, 2006), the court found that counsel's performance did not fall below an objective standard of reasonableness when the court directed the jury to use its common sense in determining the meaning of the word "knowingly" and his counsel did not object and request that the court issue a clarifying instruction. The *Valenciano* court noted the petitioner's failure to specify what advantage could have been obtained through counsel's objection. *Id*. Viarrial, likewise, fails to show how a different response to the jury note by Mr. Hotchkiss' would have assisted his case. *See also, United States v. Hernandez-Calvillo*, 2018 WL 1243449, at *3 (D. Kan. Mar. 9, 2018) (proper for jury to apply ordinary meaning of terms "induce" and "encourage" using their collective judgment and experience). This claim also fails.

**E.** **Claim Five – Viarrial Has Not Shown that Mr. Hotchkiss was Ineffective for an Alleged Failure to Request a Lesser-Included Offense Instruction for Assault with a Dangerous Weapon.**

Viarrial next argues that "the attorney did not asked for jury instruction on assault with aggravated assault. The attorney would had told the court that there was no harm done to the ___ to get aggravated assault and that an instruction on just assault compare to aggravated assault. The jury would have a better understanding on the offense. Attorney cause prejudice for petitioner's case as involving, bodily harm. The outcome would have been diffrent." [sic]. Motion at 13.

Viarrial seems to be arguing that Mr. Hotchkiss was ineffective for failing to request a lesser-included offense instruction for assault with a dangerous weapon, based on the fact that "there was no harm done to [the victims]," and that by failing to do so he was prejudiced and the result would have been different had he requested such an instruction. *Id*. Viarrial claims that Mr. Hotchkiss should have requested an instruction for "aggravated assault," but does not explain how the result of requesting such an instruction would have rendered a different result. *Id.* This claim is also unsupported and should be denied.

There is no federal offense for "aggravated assault." Simple assault, however, is a lesser-included offense of assault with a dangerous weapon. *United States v. Bruce*, 458 F.3d 1157, 1158 (10th Cir. 2006). "The elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to commit bodily harm." *Id*. "A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Beck v. Alabama,* 447 U.S. 625, 635 (1980) (citation omitted). The Tenth Circuit applies the following four-part test to determine whether a lesser-included offense instruction should be given: (1) the defendant must properly request the instruction; (2) the elements of the lesser included offense must be a subset of the elements of the charged offense; (3) the element required for the greater, charged offense that is not an element of the lesser offense must be in dispute; and (4) the evidence must be such that the jury could rationally acquit the defendant on the greater offense and convict on the lesser offense. *Bruce*, 458 F.3d at 1162.

In this case, the second and third prongs of this test were met as simple assault is a lesser-included offense of assault with a dangerous weapon, and Viarrial disputed the use of a dangerous weapon and intent to commit bodily harm elements of the greater offense, assault with a dangerous

weapon. *Id*. However, the strength of the evidence proving Viarrial's assault of his three family members at gunpoint, to include the testimony of the victims at trial, was so great that no jury could rationally acquit him of these charges and convict on charges of simple assault. No doubt Mr. Hotchkiss recognized that he could not overcome this burden, and so did not request a lesser-included instruction given the strength of the evidence against his client. Therefore, Mr. Hotchkiss was not ineffective in not requesting a lesser-included instruction, and this also claim fails.

F. **Claim Six – Viarrial's Claim that Mr. Hotchkiss was Ineffective for Allegedly Failing to Challenge the 18 U.S.C. § 924(c) Charge is Procedurally-Barred.**

In this claim Viarrial argues that Mr. Hotchkiss was ineffective for "failing to argue that the counts petitioner is charge with has no element under the categorical approach." [sic]. Motion at 13. Viarrial states that, "In petitioner's case there was no actual violent and no one was harmed to constitute aggravated assault. The attorney was ineffective for not raising this claim to the court and prejudice was done when it was presented to the jury." [sic]. *Id*. Viarrial appears to be arguing that the assault with a dangerous weapon offenses are insufficient predicates for the 18 U.S.C. § 924(c) charge as they do not constitute crimes of violence because, categorically, they do not satisfy § 924(c)'s force clause. *Id*.

Viarrial is barred from raising this claim as it was already addressed and disposed of on direct appeal. CR Doc. 156 at 11. "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Temple*, 480 F. App'x 478, 480 (10th Cir. 2012) (citations omitted). Moreover, Viarrial conceded in his reply brief that *United States v. Ontiveros*, 875 F.3d

533 (10th Cir. 2017)[6] foreclosed a challenge to his § 924(c) conviction.  As such, the issue is moot

and there is no viable ineffective assistance claim.

      **G.**      **Claim Seven – Viarrial's Claim that Mr. Hotchkiss was Ineffective for Failing to Object to His Three Convictions for Assault with a Dangerous Weapon on the Basis that they Violated Double Jeopardy is Also Procedurally-Barred.**

In this claim Viarrial argues that his three convictions for assault with a dangerous weapon

violated the Double Jeopardy Clause because the government established only one assault.  He

argues that Mr. Hotchkiss was ineffective for failing to object to the convictions, and that he now

suffers prejudice and that "it effects my chance to go to RDAP.[7]"

Again, Viarrial is procedurally-barred from raising this claim as it was already addressed

and rejected on direct appeal.  CR Doc. 156; *Temple*, 480 F. App'x at 480.  On appeal, Viarrial

argued that the proper unit of prosecution for a § 113(a)(3) charge should be assault-based rather

than victim-based.  The Tenth Circuit Court of Appeals found it unnecessary to resolve this

question, CR Doc. 156-1 at 8, because the evidence was sufficient for a reasonable jury to find

Viarrial guilty of committing three counts of assault with a dangerous weapon under either theory

of prosecution.  *Id*. at 10 (finding that it was "no great leap to infer that the gun-wielder aimed the

weapon at each person individually as he passed by him or her.").  Thus, Viarrial cannot

demonstrate prejudice and has no ineffective assistance claim.

      **H.**      **Claim Eight – Viarrial's Claim that Mr. Hotchkiss was Ineffective for Allegedly Failing to Investigate and Prepare for Trial Was Already Addressed in Claim One, is Unsupported, Meritless, and Should Be Denied.**

---

[6]  The *Ontiveros* Court found that Colorado second-degree assault required intentional causation of serious bodily harm and, therefore, met the standard for "violent force" under 18 U.S.C. § 924(e).  *Id*. at 538.  Apparently, given the similarity of the elements of the Colorado statute to the § 113(a)(3) offense, Viarrial conceded that he had no claim.

[7]  "RDAP" is an acronym for the Residential Abuse Program, an intensive nine-month, 500-hour substance abuse rehabilitation program administered by the Bureau of Prisons.  Viarrial does not state how his three convictions for assault with a dangerous weapon bar him from voluntarily enrolling in the program.

Viarrial's final claim consists of a three-page list of one to two-sentence allegations, all of which are conclusory with no supporting facts, and many of which are completely immaterial and irrelevant to the issues herein. Motion at 15-17. This Court is well aware that unsupported, conclusory allegations that counsel was ineffective are insufficient to warrant habeas relief and do not satisfy *Strickland*'s prejudice inquiry. *Humphreys v.* Gibson, 261 F.3d 1016, 1022, n.2 (10th Cir. 2001; *United States v. Pena*, 566 Fed.Appx. 645, 650 (10th Cir. 2014). Since the government's responses to these claims are nearly the same for all the claims, undersigned counsel provides short, bolded responses for the sake of brevity.

- The claims in paragraphs 1 and 2 (Motion at 15), are identical to Claim One. **The United States incorporates its response to Claim One herein for this response.**

- Viarrial claims that Mr. Hotchkiss failed to prepare for: (Motion at 15-17)

1. to recuse the judge – same judge presided over my 1994 captol murder case which I was acquitted [sic]. **The burden on a party moving for the recusal of a judge is substantial.** *See In re McCarthey,* **368 F.3d 1266, 1269 (10th Cir. 2004). Recusal is only appropriate where "impartiality might reasonably be questioned," or "[w]here [the judge] has a personal bias or prejudice concerning a party...." 28 U.S.C. § 455(a) & (b)(1). "[C]onclusions, rumors, beliefs, and opinions are not sufficient to form the basis for disqualification."** *Hinman v. Rogers,* **831 F.2d 937, 939 (10th Cir. 1987). Viarrial fails to provide specific facts demonstrating that Judge Vázquez had a personal bias or prejudice against him, or that an objective person could have reasonably questioned her partiality. Therefore, he does not demonstrate that Mr. Hotchkiss was ineffective for failing to request recusal of Judge Vázquez, or that he suffered prejudice.** *See United States v. Brown*, **369 Fed.Appx. 935, 936-37 (10th Cir. 2010) (denying ineffective assistance of counsel claim for failure to file recusal motion because petitioner failed to show how he was prejudiced by judge presiding over his previous bank robbery trial for which he was acquitted);** *see also Smith v. United States,* **360 F.2d 590, 592 (5th Cir. 1966) (trial judge familiar with defendant's background by reason of having tried him in previous cases is not disqualified to try same defendant in subsequent cases).**

2. ask for an expert witness. **Conclusory and unsupported; no factual basis for claim; fails to demonstrate prejudice and how the outcome of his case would have been different had Mr. Hotchkiss' engaged an expert witness.**

3. get medical record about my head injury. ***Id.; fails to demonstrate prejudice and how the outcome of his case would have been different had Mr. Hotchkiss' obtained these medical records.***

4. did not object to the BIA JP Montawine when he ask to sit with U.S. Attorney, [sic] – Montawine should have been called to testify on his investigations and actions on my case. ***Id.; case agent is customarily seated with AUSA at counsel table for trial; id.***

5. did not present the witnesses that I ask for. **Conclusory and unsupported; no factual basis for claim; does not identify the witnesses; fails to demonstrate prejudice and how the outcome of his case would have been different had Mr. Hotchkiss presented the requested witnesses.**

6. evidence of facts that would support my innocent claim, [sic]. ***Id.; provides no factual basis for claim; nor does he demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.***

7. did not make facts to out weigh the defendant for continuance under § 3161 [sic]. ***Id.***

8. cross examine the government witnesses for the unproving allegation. ***Id.***

9. did not prove the contradiction of government witnesses with on the record facts about interviews compared to the testimony [sic]. ***Id.***

10. did not object to the prosecutions' saying he's an Indain several times at trial [sic]. ***Id.; Because Indian status was an element of the assault charges which the government was required to prove, asserting such an objection would have been absurd.***

11. did not ask during cross examination if Wanta Quintana was getting leniency and not getting charge for conspiracy in this case to help the government [sic]. **Immaterial. Ms. Quintana was not charged with an offense**.

12. where the victims stole the gun that petitioner just bought prior before the arrest of petitioner, and to prove this the attorney "knew about the gun receipt and gun case and not confiscated" that was there when the two searches were done and this was not presented to the court and jury [sic]. **Scrutiny of counsel's performance must be highly deferential.** ***Byrd,*** **645 F.3d at 1168; counsel's tactical decisions concerning trial strategy must be completely unreasonable, not merely wrong, in order to be constitutionally deficient.** ***Fox v. Ward***, **200 F.3d 1286, 1296 (10th Cir. 2000); provides no factual basis for claim; nor does he demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.**

13. to raise the issues that the jury we picked was not the same ones that we picked because they were not in their assigned seats [sic] **Conclusory and unsupported; no factual basis for claim; scrutiny of counsel's performance must be highly deferential.** ***Byrd,*** **645 F.3d at 1168; generally, "[a]n attorney's actions**

during voir dire are considered to be matters of trial strategy," which "cannot be the basis" of an ineffective assistance claim "unless counsel's decision is ... so ill chosen that it permeates the entire trial with obvious unfairness." *Nguyen v. Reynolds,* 131 F.3d 1340, 1349 (10th Cir.1997); does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.

14. to question petitioner adequately on the facts of the testimony about the governments witnesses to prove his innocent [sic]. **Conclusory and unsupported; no factual basis for claim; does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.**

15. Attorney did not review petitioner's arrest record in preparation for trial or tell the jury about 2013 acquittal. **Conclusory and unsupported; no factual basis for claim; scrutiny of counsel's performance must be highly deferential. *Byrd,* 645 F.3d at 1168; counsel's tactical decisions concerning trial strategy must be completely unreasonable, not merely wrong, in order to be constitutionally deficient. *Fox, 200 F.3d at 1296.* Advising the jury of Viarrial's 2013 acquittal could have been prejudicial; does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.**

16. did not investigate the alleged 2013 assault that was for one of the government witnesses that petitioner was acquitted on and during petitioner's testimony the attorney asked petitioner if he was arrested for that charge and petitioner answered yes  Due to petitioner's brain injury he could not remember if he got arrested or not and come to find out that he was not arrested and this show's that the attorney did not investigate this alleged 2013 assault. [sic]. **Conclusory and unsupported; no factual basis for claim; does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.**

17. did not get an expert or a grip test to show the strength petitioner vs size of Ricky and if it was a fact of what the witness said during the circumstance of the alleged offense. [sic]. **Conclusory and unsupported; no factual basis for claim; scrutiny of counsel's performance must be highly deferential. *Byrd,* 645 F.3d at 1168; counsel's tactical decisions concerning trial strategy must be completely unreasonable, not merely wrong, in order to be constitutionally deficient. *Fox, 200 F.3d at 1296;* does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.**

18. attorney made a false strategy move saying that petitioner's dad had a pony tail. **Conclusory and unsupported; irrelevant; does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Hotchkiss' actions.**

19. did not ask for the witness Nathan Romero testimony and with-held the CD where his statement could have been used at trial and to prove that petitioner is innocent. [sic]. **See response to no. 17.**

20. attorney did not ask for the dispatch report to prove that the fact the police were lying on the stand about the search and and when it took place, and to task for the dispatcher testimony, and of other witnesses and did not ask for the officer that confiscated petitioner's guns that were in the safe to prove perjury on the officers that did the search, and seizure, time wise. [sic]. **Id.**

21. did not get the document and transcripts from the Trible Court to prove that Wanda Quintana committed perjury with contradiction of what she said. **Id.**

22. did not bring up the time when petitioner had paid $4,500 to Wanta Quintana for joint custody to prove that I was in good standing and reliable and trust worthy for the kids. [sic]. **Id.**

23. did not investigate the kids schooling and education neglect on the mother behalf by proving with report cards and their attendance that they did not want to go to school and this was the kids motive to blame their dad with this offense so that they would not go to school, and with evidence that petitioner got subpoena in June 12, 2018 and July 13, 2018, Case No. 18-020-J(A) to prove that the kids are still not going to school, and this would support the petitioner's testimony on the fact that this was the kids motive from the start. [sic]. **Id.**

24. at the suppression hearing the attorney did not argue the warrant had the wrong address and on the consent to search form. **Immaterial.** *See United States v. Lora–Solano*, **330 F.3d 1288, 1293 (10th Cir. 2003) (incorrect address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched). Moreover, Viarrial consented to the search of his home, and the search warrant was issued by a Pojoaque Pueblo Tribal Court judge, not by a United States Magistrate judge.**

25. the attorney did not investigate the father of Wanda Quintana to prove that petitioner never said he was going to kill him. **See response to no. 17.**

26. Refugio stated on interview p.28 #8 that my dad would not been going through this if did not make him and his brother go back home and attend school, the attorney with-held this information with the U.S. Attorney and the attorney did not use this as evidence at trial. [sic]. **Id.**

27. the attorney did not ask for an forensic interviewer for the government witnesses to ask the proper questions and petitioner family was willing to pay for it and the attorney did not follow through with this. [sic]. **Id.**

28. failed to investigat the discovery on Theresa and Estephanie that their information was mixed up and for that reason the attorney asked the wrong questions to wrong person. [sic]. *Id*.

29. the attorney did not argue that petitioner had a right to bare arms to have a weapons at his home for protections from the passed experience with his older son that got killed. [sic]. *Id*; **The Second Amendment protects "the right of the people to keep and bear Arms." U. S. Const. amend. II. It does not provide a defense to an otherwise valid assault charge.** *See United States v. Morsette*, **622 F.3d 1200, 1202 (9th Cir. 2010) (finding that the Supreme Court's Second Amendment jurisprudence has not expanded or changed the defense of self-defense).**

30. the sentencing attorney Stephan Aarons did not properly investigate the PSR for facts that do with my uncharge conducts and did not defend petitioner properly, Attorney failed to object several times and present evidence and witnesses as I testified to for the record. Did not investigate government misconduct and of government withholding evidence, witnesses testimony and interviews. **Viarrial is apparently also displeased with the services rendered by Stephen Aarons, counsel he engaged after dismissing Mr. Hotchkiss and Mr. Baker. He makes the same type of conclusory and unsupported allegations against Mr. Aarons, with no factual basis. These claims, likewise, should not be countenanced.** *See Hall*, **935 F.2d at 1110 (even** *pro se* **petitioners must allege sufficient facts on which a recognized legal claim can be based; conclusory allegations will not suffice for a claim under § 2255). Viarrial does not demonstrate prejudice and how the outcome of his case would have been different but for Mr. Aaron's actions.**

I.     **Motion for Continuance – Viarrial's "Motion for Continuance, to File Memorandum of Law and Dockets that I Don't Have" – is Improper and Should be Denied.**

Lastly, Viarrial embeds a "Motion for Continuance, to file Memorandum of Law, and

Dockets that I Don't Have" at page 14 of his Motion. The motion provides:

Petitioner had ask the court for all evidence that was used and unused at trial and had not received any at this time and the arguments are just conclusion with no facts to support it and it is hard to demonstrate ineffective assistance of counsel with prejudice. If the court had given all the dockets he needs like the discovery and CR Doc. 16, 17, 18, 19, 24, 28, 32, 43, and 45. Petitioner never had a reply from this court about his request. For this reasond petitioner would like more time to prepare his case. Petitioner Gerald Viarrial as pro-se is notifying this court that he is appearing as pro-se litigator. [sic].

This "motion for continuance" is improper and should be denied.

28 U.S.C. § 2255(f) provides for a one-year statute of limitations within which a petitioner may file a motion to vacate, set aside, or correct his sentence under that statute. The one-year period runs from the latest of four events, of which the date on which the judgment of conviction becomes final is the applicable event in Viarrial's case. 28 U.S.C. § 2255(f)(1). Viarrial timely filed his 28 U.S.C. § 2255 Motion, given that the Tenth Circuit Court of Appeals affirmed his conviction on April 16, 2018, and the conviction became final on July 16, 2018. *Clay v. United States*, 537 U.S. 522 (2003) (conviction becomes final 90 days after entry of court of appeal's judgment). Thus, under 28 U.S.C. § 2255(f) Viarrial had until July 16, 2019 to file his § 2255 motion, although he mailed his motion to the court on April 15, 2019, and the court clerk filed the same to the docket on April 19, 2019. CV Doc. 1.

§ 2255's period of limitation is not jurisdictional but is instead a procedural statute of limitations subject to equitable tolling. *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999). Equitable tolling is "a rare remedy" successfully invoked only "in unusual circumstances," and is "to be applied sparingly." *Yang v. Archuleta,* 525 F.3d 925, 929 (10th Cir. 2008) (citations omitted). To be entitled to equitable tolling, a litigant generally must establish two elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* at 928 (quoting *Lawrence v. Florida,* 549 U.S. 327, 335-37 (2007)).

A lack of access to one's own legal materials must be coupled with due diligence to warrant equitable tolling. A petitioner could show due diligence by making "multiple requests that his documents be returned before the deadline." *United States v. Gabaldon*, 522 F.3d 1121, 1126– 27; see also *Espinoza–Matthews v. California,* 432 F.3d 1021, 1027, n.6 (9th Cir. 2005) (equitable tolling of statute of limitations granted where prisoner made "repeated written and oral requests for his property," especially his legal documents, but "[f]or nearly 11 months ... could not obtain his

legal papers"). Here, Viarrial provides no specificity regarding his efforts to obtain court records, to include those specific pleadings he references in his Motion. He only infers that the Court did not give him all documents he says he needed (i.e., CR Docs. 16, 17, 18, 19, 24, 28, 32, 43, and 45). *Id*. at 14. He also states that he "never had a reply from the court about his request." *Id*. *See Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (rejecting claim of impediment to legal materials because of lack of specificity with regard to alleged lack of access). Nor has Viarrial provided specific details regarding any restrictions placed on his access to legal materials or how such restrictions hindered his ability to address the claims raised in his Motion. *Cf. Gabaldon,* 522 F.3d at 1126-27 (concluding that the prisoner "demonstrated due diligence" in pursuing his claims where he averred under penalty of perjury that "he made multiple requests [in writing and orally] that his [legal] documents be returned before the deadline" and also submitted a similar statement, made under penalty of perjury, from "his cellmate regarding his requests for the return of his documents").

Viarrial provides no proof of any due diligence in obtaining the court pleadings he says he needed. Moreover, he cites his expectation that the Court was to have provided him with discovery materials. Motion at 14. This is not the Court's function – he was to have obtained discovery materials from his prior counsel. If obtaining these materials were so critical, he should have waited a few weeks longer to file his Motion, in the attempt to obtain all the materials he claims he needed. His filing deadline was July 16, 2019, and he mailed his Motion to the Court for filing on or about April 15, 2019. Thus, he had nearly three more months to obtain these additional materials to add further claims to or improve upon his Motion. Absent a showing of due diligence and extraordinary circumstances impeding his ability to obtain the requested court pleadings, his claim of lack of access to his legal materials does not equitably toll the one-year limitation, and

his request for a continuance to file a "memorandum of law" in support of his Motion should be denied. Viarrial already filed his Motion. He does not get another "bite at the apple" unless and until the Motion is denied and he receives a certificate of appealability enabling him to further challenge his conviction and sentence. 28 U.S.C. § 2253. Until then, he is barred from raising any additional claims regarding his conviction and sentence, other than those raised in the instant Motion.

## CONCLUSION

Viarrial has failed to establish that Mr. Hotchkiss' representation fell below an objective standard of reasonableness, and that he was prejudiced by that representation. *Strickland*, 466 U.S. at 687. His claims are false, conclusory and unsupported, or both, and at least two are procedurally-barred. For these reasons, this Court should deny Viarrial's § 2255 Motion without an evidentiary hearing.

Respectfully submitted,
JOHN C. ANDERSON
United States Attorney

*Electronically filed on September 30, 2019*
KYLE T. NAYBACK
Supervisory Assistant United States Attorney
P. O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274 (telephone)
(505) 346-6887 (facsimile)

I HEREBY CERTIFY that a true copy of the foregoing pleading was mailed to Defendant-Movant Gerald James Viarrial, #09280-051, FCI Big Spring, 1900 Simler Avenue, Big Spring, TX, 79720, on the 30th day of September, 2019.

*Electronically filed on 9/30/2019*
KYLE T. NAYBACK
Supervisory Assistant United States Attorney