# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

GERALD JAMES VIARRIAL,

       Petitioner,

v.                                                        Civ. 19-361 MV/SCY
                                                          Cr. 15-214 MV/SCY 1

UNITED STATES OF AMERICA,

       Respondent.

## PROPOSED FINDINGS & RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody. Criminal ("CR") Doc.

157; Civil ("CV") Doc. 1. Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil

Procedure 72(a), United States District Judge Martha Vázquez referred this matter to me to

conduct hearings, if warranted, and to perform any legal analysis required to recommend an

ultimate disposition of the case. CV Doc. 3. Consistent with that order of reference and having

reviewed the pleadings and record before the Court, I recommend that the Court deny the Motion

to Vacate.

## BACKGROUND

The underlying criminal case arise from two incidents involving Petitioner Gerald James

Viarrial and members of his family. Petitioner and his former partner, Jane Doe, have seven

children together. CR Doc. 156-1 at 2. In August 2010, Petitioner took his entire family to a field

for target practice with firearms. *Id.* After they returned home, Petitioner realized a set of keys

was lost and he took his partner and children back to the field where he commanded them to find

the missing keys. *Id.* When his family was unsuccessful, he ordered them into a line and walked

around them, threatening them with a firearm, shouting profanity, and telling them their bodies would not be found after he killed them. *Id.* The altercation ended when Petitioner's cell phone rang. *Id.* Threats and physical abuse continued for years, including a March 24, 2014 incident in which Petitioner choked his oldest son, John Doe 1. *See* CR Doc. 2 at 3. John Doe 1 eventually reported his father to the authorities and on January 21, 2015, a grand jury indicted Petitioner on seven counts: Counts 1-3 assault with a dangerous weapon in violation of 18 U.S.C. §§ 2, 1153, 113(a)(3) for the August 2010 incident; Count 4 abandonment or abuse of a child in violation of 18 U.S.C. §§ 13, 1153 and N.M.S.A. 1978, 30-6-1(D) for the August 2010 incident; Count 5 using, carrying, possessing, and brandishing a firearm during and in relation to and in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) for the August 2010 incident; Count 6 assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6) for the March 2014 incident; Count 7 abandonment or abuse of a child in violation of 18 U.S.C. §§ 13, 1153 and N.M.S.A. 1978, 30-6-1(D) for the March 2014 incident. CR Doc. 2. Shortly thereafter, attorney Todd Hotchkiss entered his appearance on behalf of Petitioner. CR Doc. 9.

Petitioner proceeded to trial on December 14, 2015 and a jury found him guilty on Counts 1, 2, 3, 5, and 6. CR Doc. 95. On January 7, 2016 Petitioner's attorney, Todd Hotchkiss moved to withdraw from the case, indicating that following the trial Petitioner expressed a lack of confidence and trust in Mr. Hotchkiss. CR Doc. 99. The Court granted that motion on January 13, 2016, CR Doc. 100, and appointed attorney Wayne Baker, CR Doc. 101. On June 20, 2016, Petitioner filed a Motion to Substitute Attorney, explaining that he gathered "sufficient resources to retain private counsel for the purposes of sentencing and any appeal." CR Doc. 113. The Court granted that motion, allowing Mr. Baker to withdraw and Stephen Aarons to represent Petitioner. CR Doc. 114.

On January 26, 2017, the Court sentenced Petitioner to a 240 months' imprisonment followed by 5 years' supervised release. CR Doc. 130. Following entry of judgment on March 8, 2017, Petitioner filed a Notice of Appeal. CR Doc. 131. Mr. Aarons filed the notice of appeal but did not address payment of the filing fee. After Petitioner filed a financial declaration stating he no longer had the funds to pay for his hired attorney, the Tenth Circuit ordered his attorney, Mr. Aarons, to file a compliant motion to withdraw. CR Doc. 139. When Mr. Aarons failed to respond, the Tenth Circuit removed him as counsel of record and appointed a federal public defender. CR Doc. 140. On May 18, 2017, attorney Oliver Sanderford entered his appearance, CR docket entry May 8, 2017, and completed the designation of record for appeal, CR Doc. 141. On April 16, 2018, the Tenth Circuit affirmed Petitioner's conviction. CR Doc. 156-1.

On April 19, 2019, Petitioner, proceeding pro se, filed the present Motion to Vacate Under 28 U.S.C. § 2255. CR Doc. 157; CV Doc. 1. The Court conducted an initial screening and ordered the United States to respond the Motion to Vacate. CV Doc. 2. After receiving an extension of time, CV Doc. 6, the United States files its response on September 30, 2019. CV Doc. 7.

On December 11, 2019, Petitioner filed a Motion to Amend. The Court ordered Petitioner to supplement his Motion to Amend and submit his proposed amended motion to vacate. CV Doc. 10. Petitioner did not submit the required supplement, but instead submitted an untimely reply to his original Motion to Amend. CV Doc. 12. Accordingly, on my recommendation, the Court denied Petitioner's Motion to Amend. CV Docs. 11, 13. Although Petitioner's untimely reply did not satisfy the Court's Order to supplement his Motion to Amend, to the extent the

reply bears on Petitioner's Motion to Vacate, I recommend the Court consider it, given Petitioner's pro se status.[1]

Presently before the Court is Petitioner's original Motion to Vacate Under 28 U.S.C. § 2255. CV Doc. 1. In that motion, Petitioner states eight grounds on which he asserts he is being held in violation of the Constitution, laws, or treaties of the United States. Each ground is a different claim regarding ineffective assistance of counsel either during trial or at sentencing. *Id.*

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . , or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the petitioner to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

When a party proceeds pro se, the court generally construes his pleadings liberally, holding them to a less stringent standard than those filed by a party represented by counsel. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court will not fashion

---

[1] Petitioner's reply is 56 pages, including hand-written and type-written arguments, letters, and court documents. While I recommend considering the reply in addressing the merits of Petitioner's Motion to Vacate, I do not recommend considering any new arguments, of which there are many, raised for the first time in reply. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016).

Petitioner's "arguments for him where his allegations are merely conclusory in nature without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

## ANALYSIS

It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective assistance claim, a movant must demonstrate (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88.

Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the

inquiry, the movant must establish prejudice by showing "that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine

confidence in the outcome." *Id.* Courts may analyze either prong first and need only address one

prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

### 1. Ground One: Speedy Trial Act violation

Petitioner first alleges that his trial attorney, Mr. Hotchkiss, was ineffective by allowing

violations of the Speedy Trial Act. The Speedy Trial Act requires that "a criminal trial

commence within seventy days of the filing of the indictment or information or the defendant's

appearance, whichever occurs last." *United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir.

2009). Excluded from the seventy-day requirement is

> Any period of delay resulting from a continuance granted by any judge on his own
> motion or at the request of the defendant or his counsel or at the request of the
> attorney for the Government, if the judge granted such continuance on the basis of
> his findings that the ends of justice served by taking such action outweigh the best
> interest of the public and the defendant in a speedy trial.

*Id.* (quoting 18 U.S.C. § 3161(h)(7)(A)). When using the ends-of-justice provision, the court

must set "forth, in the record of the case, either orally or in writing, its reasons for finding that

the ends of justice served by the granting of such continuance outweigh the best interests of the

public and the defendant in a speedy trial," considering the factors listed in 18 U.S.C. §

3161(h)(7)(B)(i)-(iv). *Id.*

In this case, Petitioner first appeared in Court on January 29, 2015. CR Doc. 5. The Court

initially set trial for March 16, 2015. CR Doc. 16. On March 6, 2015, Mr. Hotchkiss filed the

first unopposed motion to continue. *Id.* In granting that continuance and the next two

continuances, the Court looked at the specific issues of the case and found that granting a continuance to resolve certain issues outweighed the public's and defendant's interest in a speedy trial. CR Docs. 17, 19, 32. Accordingly, such time did not count against the seventy-day time limit and less than seventy days passed from Petitioner's initial appearance to his trial. Petitioner has not shown that Mr. Hotchkiss was ineffective for allowing a Speedy Trial Act violation because the record reflects that no Speedy Trial Act violation occurred.

In connection with his argument that Mr. Hotchkiss allowed a Speedy Trial Act violation, Petitioner also asserts that Mr. Hotchkiss did not adequately prepare for trial. As evidence, Petitioner quotes language from the Court's order denying Petitioner's fourth motion for a trial continuance. CR Doc. 1 at 4. In that Order, the Court found that Mr. Hotchkiss, by arguing that he needed more time "for an investigation of the complicated circumstances to occur, and to evaluate the case to be able to render adequate and effective assistance of counsel," effectively admitted that he "has not appropriately managed his time or diligently prepared for trial." CR Doc. 45 at 4, 5. Petitioner's argument that Mr. Hotchkiss did not adequately prepare for trial, however, does not logically relate to his argument that Mr. Hotchkiss allowed a violation of the Speedy Trial Act to occur. As a result, the Court addresses Petitioner's argument that Mr. Hotchkiss did not adequately prepare for trial later in this PFRD when it addresses Petitioner's eighth ground for relief, in which Petitioner again alleges that Mr. Hotchkiss failed to adequately investigate and prepare for trial.

For these reasons, I recommend finding that Petitioner is not entitled to relief based on Ground One of his Motion to Vacate.

**2.  Ground Three: Government's expert, Dr. Hawley**

Because my analysis of Petitioner's third ground for relief informs my analysis of his second ground for relief, I address Petitioner's third ground before I address his second ground. In his third ground for relief, Petitioner asserts that Mr. Hotchkiss was ineffective by not objecting "to Dr. Hawley being allowed to testify about the out of court statement by Ricky on which he based his opinion." CV Doc. 1 at 6. Petitioner explains that "[t]hose statements were hearsay and thus inadmissible. Federal Rule of Evidence 703 allows an expert to testify about inadmissible evidence that forms the basis of his opinion only if the probative value of the evidence substantially outweighs its prejudice effect. Attorney did not make an objection on this ground." *Id.*

Petitioner is wrong about Mr. Hotchkiss not making this objection. Leading up to trial, the government filed a Notice of Intention to Offer Expert Testimony, providing notice that Dr. Dean Hawley would testify regarding "the Defendant's strangulation of John Doe 1 (R.V.)." CR Doc. 53. Dr. Hawley's report indicated that he reviewed a number of documents, including an interview of Ricky, documenting that Ricky stated that his dad (Petitioner) choked him with his hand. CR Doc. 53-2 at 2, 3. Dr. Hawley concluded that:

> It is my opinion that Ricky Viarrial did sustain a manual strangulation assault. It is my opinion that his symptoms, "he could not breathe" (attributed to Agent Montowine, page 45 of 1-194 file, during interview with RV on 3/28/14) and that "he thought he was going to die" (attributed to Agent Montowine, interview 5/15/15) are typical of a serious, life threatening strangulation assault. In my opinion, failure to remember specifics about pain and other symptoms is typical of serious strangulation assaults, where there is significant fear of death.

*Id.* at 3-4.

Mr. Hotchkiss filed a response to the Notice, objecting to Dr. Hawley's testimony because "[t]he very questionable probative value of the proposed testimony would be

substantially outweighed by the danger of unfair prejudice." CR Doc. 78 at 8-9. He further

argued that "[t]he expertise of the witness is not relevant to the particular facts and circumstances

of this case[,]" and that "the proposed expert testimony is not adequately based on relevant

empirical research." *Id.* at 8-9. The trial judge, Judge Vasquez, held a hearing on this issue[2] at

which Mr. Hotchkiss again challenged the foundation of Dr. Hawley's testimony. CR Doc. 91 at

8:20-25. Judge Vasquez ruled that Dr. Hawley would be allowed to testify, finding that any

potential inconsistency could be addressed by impeachment and cross-examination. *Id.* at 20:20-

21:3. During trial, Dr. Hawley testified and Mr. Hotchkiss lodged his prior objections. CR Doc.

107 at 106:20-22. Based on this series of events and the facts Petitioner presents in his Motion, I

reject Petitioner's argument that Mr. Hotchkiss was professionally unreasonable for failing to

object to Mr. Hawley's testimony. In contrast to Petitioner's allegations, the record clearly

demonstrates that Mr. Hotchkiss did object to Dr. Hawley's testimony—both before and during

trial.

     Petitioner is particularly upset that Dr. Hawley testified about "out of court statements by

Ricky on which he based his opinion," and that Mr. Hotchkiss did not object to Dr. Hawley's

testimony on the basis of hearsay. CV Doc. 1 at 6; CV Doc. 12 at 11. Indeed, Dr. Hawley

testified at trial that he based his opinion on statements from Ricky and he summarized those

statements for the jury. CR Doc. 107 at 107:8-108:2. Given that Mr. Hotchkiss objected to this

testimony, however, Petitioner's gripe is with the Court, which made the ruling he does not like,

rather than with Mr. Hotchkiss, who strenuously objected to that ruling. To the extent Petitioner

believes the Court made an erroneous ruling, his proper avenue for redress is through direct

---

[2] The Notice of Hearing and the transcript are sealed to case participants only because Judge
Vasquez heard several issues at the hearing, including an ex parte motion. CV Doc. 79.

appeal, not through a § 2255 motion in which he must establish that his counsel, who strenuously objected to the ruling, was ineffective.

Further, to the extent Petitioner argues that Mr. Hotchkiss should have objected to the statement as hearsay, I note that such an argument would be futile, given that the statement was not offered for the truth of the matter asserted and the Court did not allow the statement to be introduced into evidence for the truth of the matter asserted. As even Petitioner correctly points out, Dr. Hawley's testimony about Ricky's statement was not admitted as "substantive evidence but only to explain [the] basis of his opinion. Indeed, Dr. Hawley made clear that he was not testifying to the truth of the statements, and this his opinion was simply based on assumption that the statements were true." CV Doc. 12 at 10; *see also* Fed. R. Evid. 801(c)(2) ("Hearsay means a statement that a party offers in evidence to provide the truth of the matter asserted in the statement."). In sum, Mr. Hotchkiss objected to the jury hearing this statement, whether it came in through the front door or the back door. In doing so, Mr. Hotchkiss was not ineffective.

Finally, Ricky himself testified about the same statements Dr. Hawley discussed. Thus, Petitioner was able to confront those statements through cross-examination of Ricky. This lessens any potential prejudice of letting Dr. Hawley discuss those statements, even assuming letting him do so was error. Thus, even if Mr. Hotchkiss had not objected to Dr. Hawley's testimony, and even assuming the Court erred in allowing the testimony, Petitioner has not demonstrated prejudice and so his argument would still fail.[3] *See* CR Doc. 107 at 173:1-2, 174:8-175:25.

For these reasons, I recommend denying Petitioner's Motion as to Ground Three.

---

[3] Petitioner also asserts that his counsel was ineffective for not insisting that Dr. Hawley testify after Ricky testified. CV Doc. 12 at 11. Petitioner raises this argument for the first time in reply and so I will not consider it.

### 3.  Ground Two: Eliciting hearsay statements on cross-examination

Petitioner argues in ground two that his trial counsel, Mr. Hotchkiss, was ineffective by "eliciting on cross-examination of Eric Johnson that Ricky said that petitioner had choked him to the point he could not . . . It was not a Fact for Ricky's statement because it was not detailed. Attorney elicited Ricky's out-of-court statement by not cross-examination of Eric Johnson for the squeezed to the point on that throat where Ricky had a hard time breathing [sic]." CV Doc. 1 at 5 (ellipses in original).[4]

Eric Johnson is a Pojoaque Police Lieutenant and Ricky, also referred to as John Doe 1, is one of Petitioner's sons. On direct examination, Lieutenant Johnson testified that he became involved in this case on March 24, 2014 after receiving information that a young man requested help for him and his sibling to get away from their father. CR Doc. 106 at 56:2-22. Lieutenant Johnson testified that on March 28, 2014 he spoke with Petitioner's son, Ricky Viarrial. *Id.* at 58:4-8, 59:5-9. On cross-examination, Mr. Hotchkiss asked Lieutenant Johnson about the March 28 interview with Ricky. *Id.* at 84:20-85:1. Mr. Hotchkiss had the following exchange with Lieutenant Johnson:

> Q. (Mr. Hotchkiss) When you interviewed Ricky on the 28th of March, you reached a conclusion about whether Mr. Viarrial, his father, had choked Ricky on March 24th. Isn't that correct?
>
> A. Well, I made a determination it needed to be investigated further, and further interviews as well would be needed.
>
> Q. Okay, so you didn't make a conclusion about whether Mr. Viarrial had choked Ricky and Ricky couldn't breathe?
>
> A. Well, I obtained the information. And I would later use that as – his statement as probable cause in the case.

---

[4] The ellipses in the quoted language are in the original and do not signify the omission of any text.

Q. So, did you make that conclusion, then?

A. Based on Ricky's and Refugio's statements, I would say yes.

Q. Do you remember what Ricky told you about that?

A. Basically, Ricky explained that his dad had choked him on Monday, the 24th. He said that he grabbed him by the throat, and reared back and as if he was going to punch him. And when I asked him to describe what he meant by choking, he said he put his hand on his throat and squeezed his throat to the point that he had a hard time breathing.

*Q. Okay. Now, you didn't put anything about squeezing of the throat in your report, did you?*

A. Well, it's from what he described.

*Q. But you didn't put that in your report?*

A. I don't recall. I believe the way I worded it was "choked."

Q. As a result of interviewing Ricky and Refugio, you made the determination that they should be interviewed at a Safehouse.

A. That is correct.

Q. And, part of the reason you did that is because *Safehouse interviews are a better place for children to reveal information, isn't that correct?*

A. I would say a more comfortable place.

*Q. It's more forthcoming?*

A. I would say more encouraging, yes.

*Q. Okay. And do you believe the statements made there are more reliable?*

A. Well, from what I've been trained, it's my understanding it's a method to obtain more information.

*Id.* at 86:3- 87:22 (emphasis added).

Petitioner's argument ignores the context in which this cross-examination occurred. As set forth above, over Mr. Hotchkiss' written and oral objections, the Court ruled that the

government's expert, Dr. Hawley, could discuss Ricky's statement for the purpose of explaining the basis for his opinion, assuming the statement were true. It would not be unreasonable for Mr. Hotchkiss to harbor concerns that, in spite of any limiting instruction the Court might give, the distinction between what Ricky's statement was admitted for, and what it was not admitted for, might be lost on the jury. Knowing, based on the Court's pretrial ruling, that the jury was going to hear about the choking incident, it was not unreasonable for Mr. Hotchkiss to attempt to draw the sting out of this statement through Lieutenant Johnson, the government's first witness.

It is clear from Mr. Hotchkiss' exchange with Lieutenant Johnson that he was trying to cast doubt on the allegation that Petitioner choked Ricky. First, he asked questions that implied Lieutenant Johnson too quickly concluded that that Petitioner choked Ricky. Second, Mr. Hotchkiss attempted to cast doubt on Lieutenant Johnson's testimony that Ricky said Petitioner squeezed his throat by noting that Lieutenant Johnson did not say this in his report. Third, Mr. Hotchkiss attempted to cast further doubt on Ricky's statement by implying through his questions that statements made at safehouses are less reliable because the setting is designed to elicit statements that are favorable to law enforcement. I do not find that these attempts to cast doubt on Ricky's statement to Lieutenant Johnson fall below an objective standard of reasonableness; instead, they constitute reasonable attempts to reduce the adverse impact of Ricky's statement that Mr. Hotchkiss already knew the jury was going to hear.

Additionally, even if Mr. Hotchkiss' performance was deficient for eliciting hearsay testimony that Petitioner choked his son Ricky, Petitioner fails to present any facts showing he was prejudiced by such testimony. Petitioner argues that Lieutenant Johnson's testimony was the "only evidence from which the jury could find that [he] strangled Ricky." CV Doc 12 at 10. On the contrary, Ricky also testified at trial, on direct examination by the government, that Petitioner

put his hand on Ricky's throat and that it was difficult to breathe. *See* CR Doc. 174:8-22. True, after Ricky testified that he had a hard time breathing, he also testified that Petitioner did not squeeze his neck and that he didn't have a hard time breathing. CR Doc. 175:18-25. While such testimony certainly impacts the weight of Ricky's original testimony, it does not negate the fact that Ricky, in addition to Lieutenant Johnson, testified that Petitioner placed his hand on Ricky's throat making it hard to breathe. As such, I do not find a reasonable probability that the outcome of the trial would have been different had Mr. Hotchkiss not questioned Lieutenant Johnson about the choking incident. For these reasons, I recommend denying Petitioner's Motion as to Ground Two for relief.

### 4.  Ground Four: Jury note

For his fourth ground for relief, Petitioner argues that Mr. Hotchkiss was ineffective "on how he litigated the note that the jury sent during deliberations." CV Doc. 1 at 8. Jury Instruction No. 23 read

> In order to sustain its burden of proof for the crime of assault resulting in serious bodily injury as charged in Count 6 of the Indictment, the government must prove the following four (4) essential elements beyond a reasonable doubt:
>
> *First:* The Defendant intentionally struck or strangled John Doe 1;
> *Second:* The incident occurred in Indian Country:
> *Third:* The Defendant is an Indian; and
> *Fourth:* As a result of the assault, John Doe 1 suffered serious bodily injury.
>
> The term "serious bodily injury means bodily injury which involves-
> (A)     A substantial risk of death;
> (B)     Extreme physical pain;
> (C)     Protracted and obvious disfigurement; or
> (D)     Protracted loss of impairment of the function of a bodily member, organ or mental faculty.

CR Doc. 92 at 27. During deliberations, the jury sent out a note, which read, "On jury instruction #23, what is included in the term 'mental faculty'?" CR Doc. 93 at 1. Mr. Hotchkiss and the

attorneys for the government produced a joint response, approved by the Court, which stated that "'Mental faculty,' as that term is used in Instruction No. 23, should be defined by the jury in light of its common sense and experience." *Id.* at 2.

Petitioner takes issue with this response, arguing that "[t]his note suggests that at least some of the jurors were considering convicting on the ground that Ricky [John Doe 1] suffered such impairment." CV Doc. 1 at 8. However, Petitioner's argument fails to address how Mr. Hotchkiss' response to the jury note fell below an objective standard of reasonableness and I find no error.[5] Similarly, in *United States v. Valenciano*, the jury asked for a clarification on a jury instruction that included the word "knowingly." No. 06-373 BB/WPL, 2006 WL 8443577, at *6 (D.N.M. Oct. 2006) (Report and Recommendation adopted, 2007 WL 9734788). The trial judge responded that members of the jury "must use common sense to decide that question." *Id.* On a Section 2255 petition, the petitioner argued that his counsel was ineffective for not challenging the trial judge's response. *Id.* The court, however, found that "trial counsel's decision not to object to the court's refusal to issue clarifying instructions did not fall below an objective standard of reasonableness." *Id.*

Additionally, Petitioner offers no facts that show that there is a reasonable probability that the outcome of his case would have been different had Mr. Hotchkiss' response to the jury

---

[5] Petitioner argues in his reply brief that the jury note indicated that the jury was considering convicting Petitioner on assault resulting in serious bodily injury because John Doe 1 suffered an impairment to mental faculty. CV Doc. 12 at 14. He argues that the government's theory of the case never included injury to Ricky's mental faculty, and so Mr. Hotchkiss "should have asked the judge to instruct the jury that it could not convict on that theory. He should have asked that all parts of the definition of serious bodily injury in instruction #23 be stricken except substantial risk of death." CV Doc. 12 at 14. This argument takes issue with Mr. Hotchkiss' litigation of Jury Instruction No. 23 itself, not with the jury note. Because Petitioner raises this argument for the first time in reply, I recommend not considering it.

note been different. Because Petitioner makes no showing of deficient performance or prejudice,

I recommend denying relief on Ground Four.

**5.  Ground Five: Failing to request instruction on lesser-included offense**

Counts 1, 2, and 3 of the indictment charge Petitioner with assault with a dangerous

weapon. CR Doc. 2. For those counts, the government had to prove beyond a reasonable doubt

that

> ***First:*** The Defendant assaulted Jane Doe, John Doe 1, and John Doe 2 by
> intentionally using a display of force that reasonably caused her or him to fear
> immediate bodily harm;
> ***Second:*** The Defendant used a dangerous weapon, that is, a handgun;
> ***Third:*** The Defendant acted with the intent to do bodily harm to the victim;
> ***Fourth:*** The incident occurred in Indian Country; and
> ***Fifth:*** The Defendant is an Indian.

CR Doc. 92 at 22-24 (Jury instructions No. 19, 20, 21).

Petitioner argues that his trial counsel, Mr. Hotchkiss, was ineffective by not requesting a

jury instruction on the lesser-included offense of aggravated assault or even "just assault." CV

Doc. 1 at 13. Aggravated assault is not a federal offense.[6] However, simple assault is a lesser-

included offense of assault with a dangerous weapon. *United States v. Bruce*, 458 F.3d 1157,

1164 n.4 (10th Cir. 2006).[7] A defendant "may be entitled to a lesser offense instruction if the

---

[6] Petitioner asserts that Mr. Hotchkiss should have requested an instruction on the lesser offense of aggravated assault under New Mexico law. However, Petitioner makes no argument to establish that the Assimilative Crimes Act, which permits reference to state law crimes in federal court when federal law supplies no similar offense, applies to assault with a dangerous weapon and New Mexico's aggravated assault. *See United States v. Abeyta*, 27 F.3d 470, 472, 476 (10th Cir. 1994).

[7] Title 18 U.S.C. § 113 lists various types of assaults that have varying penalties and only § 113(a)(5) refers to simple assault. However, the distinction between § 113(a)(3) and the other felony assaults described in § 113 (even if they have a lesser penalty) is irrelevant to the present analysis. Therefore, for ease of reference, I refer to the assault described in § 113(a)(3) (the crime with which Petitioner was charged) as assault with a dangerous weapon; any lesser assault described in § 113, I describe as simple assault.

evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *United States v. Young*, 862 F.2d 815, 820 (10th Cir. 1988). A four-part test is used to determine if a lesser offense instruction is warranted: (1) "the defendant must properly request the instruction;" (2) "the elements of the lesser included offense must be a subset of the elements of the charged offense;" (3) "the element required for the greater, charged offense that is not an element of the lesser offense must be in dispute;" and (4) "the evidence must be such that the jury could rationally acquit the defendant on the greater offense and convict on the lesser offense." *Bruce*, 458 F.3d at 1162. In this case, "[t]he elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to commit bodily harm." *Id.* at 1164 n.4 (citation omitted). "[T]o be entitled to a simple assault instruction the defendant must contest both elements differentiating simple assault from assault with a dangerous weapon, i.e., intent to commit bodily harm and the use of a dangerous weapon." *Id.*

Here, Mr. Hotchkiss was not ineffective in declining to dispute the dangerous weapon element. After all, the setting of the alleged assaults was a place Petitioner took his children for recreational shooting. Petitioner does not dispute that he possessed a gun at the time of the alleged assault; he just asserts that he did not assault his children at all. *See* CV Doc. 12 at 16. But if he did assault them, as the jury found, there is not a dispute that he did it with a gun. No jury could rationally acquit Petitioner of assault with a dangerous weapon but convict him of a lesser assault. Indeed, in addition to the undisputed fact that Petitioner possessed a gun at the time, three of his family members testified at trial that Petitioner pointed a gun at them while yelling and making them feel that he was going to shoot them. CR Doc. 107 at 13:11-14:12; CR Doc. 107 at 169:7-17; CR Doc. 108 at 13:3-14:19. Because Petitioner's use of a dangerous weapon is undisputed, any argument Mr. Hotchkiss would have made for a lesser included

instruction would have been futile. Mr. Hotchkiss did not act ineffectively in declining to pursue a futile argument.

Similarly, Mr. Hotchkiss was not ineffective in seeking an instruction that did not contain the element of intent to commit bodily harm. Indeed, Petitioner's argument is that the weakest part of the government's case against him was its ability to prove he intended to commit bodily harm. CV Doc. 12 at 16 ("the evidence that I intended to cause anyone bodily harm was weak. After all, no one was physically harmed."). By ensuring that the instructions to the jury would include the requirement that the government prove intent to commit bodily harm in order to obtain a conviction, Mr. Hotchkiss kept what Petitioner views as a weak link in the government's chain. Had Mr. Hotchkiss successfully argued for a lesser included instruction that did not require proof of intent to commit bodily harm, this weak link would not have been available to attack. In other words, the government's path to conviction, albeit to a lesser offense, would have been easier. Although the jury ultimately convicted Petitioner of assault with a dangerous weapon, to the extent Mr. Hotchkiss made a tactical decision not to request a lesser included offense instruction, that decision was not unreasonable.

Moreover, even assuming Mr. Hotchkiss' performance was professionally unreasonable for failing to request a jury instruction on simple assault, Petitioner makes no showing that there is a reasonable probability that the outcome would have been different. He merely alleges that Mr. Hotchkiss caused prejudice to his case and concludes the "outcome would have been different." CV Doc. 1 at 13. True, had the trial court included a jury instruction for simple assault, and had the jury found Petitioner guilty of simple assault but not guilty of assault with a dangerous weapon, the outcome of Petitioner's trial and sentence would have been different. However, speculation is not enough to show prejudice. *See Byrd v. Workman*, 645 F.3d 1159,

1168 (10th Cir. 2011) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial; it does not require that the petitioner show that counsel's deficient conduct more likely than not altered the outcome in the case. However, mere speculation is not sufficient to satisfy this burden." (citations omitted)).

For these reasons, I recommend denying the Motion to Vacate on Ground Five.

### 6.   Ground Six: Failing to challenge the 18 U.S.C. § 924(c) charge

Petitioner contends that Mr. Hotchkiss was ineffective for failing to argue that "there was no actual violent [sic] and no one was harmed to constitute aggravated assault." CV Doc. 1 at 13. He further states his counsel failed to argue that "the count 5 petitioner is charged with has no element under the categorical approach." *Id.* While Petitioner provides no further details to clarify this argument, his argument appears to track an argument his appellant counsel made regarding his charge under 18 U.S.C. § 924(c). Specifically, counsel on appeal argued that Petitioner's "conviction under 18 U.S.C. § 924(c) [Count 5] must be vacated because the underlying predicate offense- assault with a dangerous weapon under section 113(a)(3)- is not a crime of violence." Appellant's Opening Brief at 25, *United States v. Viarrial*, No. 17-2032 (10th Cir. Aug. 16, 2017). Because this argument was not raised at the district court level, appeal counsel argued that it constituted plain error. *Id.* However, in reply briefing, appeal counsel conceded that *United States v. Onitveros*, 875 F.3d 533 (10th Cir. 2017), foreclosed Petitioner's "challenge to his conviction under 18 U.S.C. § 924(c), at least for the purposes of review by a three-judge panel of this Court." Appellant's Reply Brief at 5 n.1, *United States v. Viarrial*, No. 17-2032 (10th Cir. Nov. 27, 2017). Accordingly, the Tenth Circuit did not address the Section 924(c) argument. CR Doc. 156-1 at 11.

The government argues that Petitioner is procedurally barred from "raising this claim as it was already addressed and disposed of on direct appeal." CV Doc. 7 at 15. Indeed, "[a]bsent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Temple*, 480 F. App'x 478, 480 (10th Cir. 2012). However here, while Petitioner raised the Section 924(c) argument on direct appeal, he is not raising the same argument in the present motion. Instead, he is arguing for the first time that his trial counsel was ineffective for failing to raise the Section 924(c) argument at the district court level. Indeed, the Tenth Circuit has held that the procedural bar does not apply to claims of ineffective assistance of counsel "where new reasons are advanced in support of that claim." *United States v. Galloway*, 56 F.3d 1239, 1242-43 (10th Cir. 1995). Accordingly, I recommend finding that this claim is not procedurally barred and addressing it on the merits.

Petitioner is correct that his trial counsel, Mr. Hotchkiss, did not raise the Section 924(c) argument to the district court; it was first raised on appeal. The government argues that because Petitioner conceded his Section 924(c) argument on direct appeal, Mr. Hotchkiss could not have been ineffective for failing to raise it with the district court. This argument is tricky. Petitioner conceded the Section 924(c) argument on appeal only after the Tenth Circuit issued an opinion on November 7, 2017 in *Onitveros* which he determined foreclosed his argument. That decision did not exist at the time Mr. Hotchkiss was representing Petitioner before the district court and so could hardly be the reason Mr. Hotchkiss did not raise the Section 924(c) argument.

However, it is not at all clear that the Section 924(c) argument was a winning argument prior to the Tenth Circuit decision in *Onitveros*. This is illustrated by the government's vigorous opposition to the argument on appeal. *See* Appellee's Answer Brief at 37-40, *United States v.*

20

*Viarrial*, No. 17-2032 (10th Cir. Oct. 23, 2017). As such, Mr. Hotchkiss could have chosen not

to raise the argument to the district court as a valid trial strategy. And Petitioner presents no facts

to overcome the presumption that Mr. Hotchkiss' decision was a valid trial strategy. Petitioner

merely states, in a conclusory fashion, that Mr. Hotchkiss was ineffective for not raising the

Section 924(c) argument.

More significantly, even assuming Mr. Hotchkiss' performance was deficient for failing

to raise the argument, Petitioner presents no facts to show that there is a reasonable probability

that he would have succeeded on the Section 924(c) argument and that the outcome of his case

would have been different. Indeed, we now know based on the Tenth Circuit's decision in

*Ontiveros* that assault with a dangerous weapon is a crime of violence. Petitioner cannot

demonstrate he was prejudiced by his attorney's decision not to raise a legal argument that, while

not resolved by binding precedent at the time of Petitioner's trial, was later found meritless by

binding precedent. For these reasons, I recommend finding that Petitioner has not met his burden

to show ineffective assistance of counsel on this ground.

### 7. Ground Seven: Failing to object on the basis of double jeopardy

Petitioner next asserts that his counsel was ineffective for failing to object to his

conviction and sentence on the basis of double jeopardy. CV Doc. 1 at 13. Specifically,

Petitioner was convicted for three counts of assault with a dangerous weapon—each count for

assault against a different victim family member, stemming from the one incident in the field in

August 2010. He argues that the government only established one assault and so a conviction on

three counts violates his right to be free from double jeopardy. He alleges that his trial counsel,

Mr. Hotchkiss, was ineffective for failing to object to his conviction on this ground and his

counsel at sentencing, Mr. Aarons, was ineffective for failing to raise this issue during sentencing.

Petitioner's appeal counsel raised this issue on appeal, asserting that the charging statute, 18 U.S.C. § 113(a)(3), is act-based rather than victim-based in its language. Appellant's Opening Brief at 13-25, *United States v. Viarrial*, No. 17-2032. That is, "[b]ecause the evidence at trial established only one assault, albeit one with multiple victims, [Petitioner's] conviction for more than one violation of the statute cannot stand." *Id.* at 13. On plain error review, the Tenth Circuit rejected this argument, holding that the absence of well-settled law on the unit of prosecution under 18 U.S.C. § 113(a)(3) forecloses a plain error finding. CR Doc. 156-1 at 7-8 ("Neither [the Tenth Circuit] nor any other circuit has ruled on the unit of prosecution for 18 U.S.C. § 113(a)(3) . . . ."). However, the Tenth Circuit further held that "the evidence presented in this case was sufficient regardless of whether the proper unit of prosecution was victim-based or act-based." *Id.* at 8.

In the present Motion, the government again argues that because this issue was raised and disposed of on direct appeal, Petitioner is procedurally barred from raising this argument in his current collateral attack. However, as explained above, the procedural-bar doctrine does not apply to ineffective assistance of counsel claims. *See Galloway*, 56 F.3d at 1242-43. As such, I recommend addressing this ground for relief on its merits.

Petitioner is correct that his counsel did not raise this argument to the district court. *See* Appellant's Opening Brief at 13, *United States v. Viarrial*, No. 17-2032 (arguing the plain error standard on appeal because the issue was not raised below). However, as the Tenth Circuit pointed out, whether Section 113(a)(3) is action-based or victim-based is a question that no circuit court has ruled on. Mr. Hotchkiss and Mr. Aarons may have determined it was not a

winning argument and so chose to devote their resources to other areas of Petitioner's defense. Petitioner offers no facts to overcome the presumption that their actions were reasonable.

Further, even assuming Mr. Hotchkiss' and Mr. Aarons' performance was deficient for failing to make this argument at trial and at sentencing, I do not find a reasonable probability that the outcome of the case would have been different. As the Tenth Circuit held, evidence at trial was sufficient for a conviction on all three counts regardless of whether Section 113(a)(3) is victim-based or act-based. To establish prejudice, Petitioner alleges that the failure "may be harmless but it effects my chance to go to RDAP." CV Doc. 1 at 13. The government explains that RDAP is the Residential Abuse Program, a nine-month, 500-hour substance abuse rehabilitation program administered by the Bureau of Prisons. CV Doc. 7 at 16 n.7. As the government further points out, Petitioner does not explain how three convictions for assault with a dangerous weapon, compared to one, bars him from the program. Further, Petitioner fails to establish that disqualification from a Bureau of Prisons rehabilitation program constitutes a sufficient collateral consequence that is addressable through section 2255. *See United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). As such, Petitioner has failed to show prejudice as a result of his counsel failing to make the double jeopardy argument to the district court.

For these reasons, I recommend denying relief based on Ground Seven of the Motion to Vacate.

### 8. Ground Eight: Failure to investigate and prepare and miscellaneous complaints

In his eighth ground for relief, Petitioner primarily argues that his trial counsel, Mr. Hotchkiss, failed to effectively investigate and prepare for trial. CV Doc. 1 at 15.[8] The Court

---

[8] Petitioner repeats the argument in Grounds One and Eight. *Compare* CV Doc. 1 at 4, *with* CV Doc. 1 at 15. I only address this argument once, now in my Ground Eight analysis.

should reject this argument because Petitioner has not shown either that Mr. Hotchkiss failed to adequately investigate or prepare for trial or that Mr. Hotchkiss' alleged inadequate investigation and preparation prejudiced him.

Petitioner's argument finds some purchase in the Court's order rejecting his fourth motion for a trial continuance. There, the Court found that Mr. Hotchkiss, by arguing that he needed more time "for an investigation of the complicated circumstances to occur, and to evaluate the case to be able to render adequate and effective assistance of counsel," effectively admitted that he "has not appropriately managed his time or diligently prepared for trial." CR Doc. 45 at 4, 5. By way of background, Mr. Hotchkiss requested to continue the trial setting three times following Petitioner's January 21, 2015 indictment. CR Docs. 16, 18, 24. The trial was originally set for March 16, 2015, and upon an unopposed request, the Court continued trial to June 22, 2015. CR Doc. 17. Upon a second and third unopposed motion to continue, CR. Docs. 18, 24, the Court again continued the trial to August 17, 2015, CR Doc. 19, and then to December 14, 2015, CR Doc. 32. After the Court denied Petitioner's fourth unopposed Motion to Continue, CR Doc. 45, the case proceeded to trial on December 14, 2015. CR Doc. 97. Despite the above language Petitioner quotes from the Court's order denying his fourth motion for a continuance, I reject Petitioner's argument upon a close analysis of Mr. Hotchkiss' stated reasons for seeking a trial continuance, consideration of other language in the Court's various orders, and a review of what Mr. Hotchkiss actually did to prepare for trial.

In seeking a fourth continuance, Mr. Hotchkiss wrote, "discovery contains many uncharged allegations and counsel needs additional time to put together what is going to be a long and exhaustive motion in limine pertaining to uncharged conduct in this case." CR Doc. 43 at 3. Relevant to Petitioner's present argument that Mr. Hotchkiss did not adequately prepare for

trial is whether, despite the Court's denial of Petitioner's motion to continue, Mr. Hotchkiss prepared this motion in limine. The answer to this question is yes: Petitioner filed the motion in limine on November 25, 2015. CR Doc. 61. Further, this motion caused the government to represent in its Response that it would not seek to admit much of the evidence Petitioner was concerned about. CR Doc. 66 at 1-2; *see also* CR Doc. 86 (denying Petitioner's motion, in part, as moot).[9] Petitioner filed a reply to the government's response on December 7, 2015, CR Doc. 81, the Court heard argument on non-mooted issues on December 10, 2015, CR Doc. 90, and the Court issued an order on non-mooted issues on December 14, 2015, CR Doc. 89. Thus, while Mr. Hotchkiss might have been concerned on November 16, 2015 that, without a continuance, he would not have time to file his motion in limine, history reveals that Mr. Hotchkiss did manage to file such a motion, that the Court held a hearing on that motion, and that the motion was successful in causing the United States not to seek to admit much of the evidence Mr. Hotchkiss was concerned about. That Mr. Hotchkiss actually completed one of the tasks he was concerned about not being able to get done without a continuance undermines one of Petitioner's primary arguments that Mr. Hotchkiss was unable to adequately prepare for trial.

In his fourth motion to continue, Mr. Hotchkiss also represented that he needed more time to contact Petitioner's family. Petitioner, however, does not allege that in the approximately one-month period Mr. Hotchkiss had between the time he filed his motion for a fourth continuance and the time trial began that Mr. Hotchkiss was unable to contact Petitioner's family (assuming they were willing to speak to Mr. Hotchkiss). Moreover, one month is an objectively sufficient period of time to accomplish the task of speaking to family members. Without having

---

[9] Access to this and related documents are restricted to the parties and the Court. Therefore, I will discuss them in general rather than specific terms.

alleged that Mr. Hotchkiss did not attempt to contact family members or how contacting those family members in advance of trial would have affected the trial, Petitioner cannot meet his burden under § 2255.

As grounds for his request for a fourth trial continuance, Mr. Hotchkiss also noted that he had other impending trials scheduled: one on December 14, 2015 and another on January 11, 2016. CR Doc. 43 at 4. As to this first trial, the Court noted in its order denying the continuance that it resolved this conflict by continuing the conflicting trial. CR Doc. 45 at 5. And, because the January 11, 2016 trial was scheduled to begin *after* Petitioner's trial, that trial setting posed less of a threat to Mr. Hotchkiss' preparation of Petitioner's case.

In its order denying the fourth motion for a trial continuance, the Court also noted the "apparent simplicity of the factual allegations and legal issues" involved in the case. CR Doc. 45 at 5. Because of the simplicity of factual and legal issues involved in the case, the additional time Mr. Hotchkiss needed to prepare for trial was limited. Thus, even if Mr. Hotchkiss should have done more to prepare for Petitioner's case as of November 16, 2015 when he filed his fourth motion for a continuance, Petitioner presents no reason to believe that Mr. Hotchkiss was unable to complete the remaining work necessary to adequately prepare for trial in the one-month period between his fourth motion for a continuance and trial. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

After making his primary argument, Petitioner levies 31 additional complaints about the way Mr. Hotchkiss handled his case. But Petitioner provides little detail as to any of the 31 allegations of ineffective conduct. For example, Petitioner alleges that his "attorney made a false strategy move saying that petitioner's dad had a pony tail." CV Doc. 1 at 16. Without more

information, it is unclear exactly what deficient performance Petitioner is referencing. Although Petitioner's pro se pleadings are liberally construed, the court will not "assume the role of advocate" and "fashion arguments for him." *United States v. Hall*, 746 F. App'x 773, 776 (10th Cir. 2018) (quotations omitted).

For all the 31 allegations, Petitioner merely states that his counsel was ineffective. He does not attempt to establish that Mr. Hotchkiss' action, or lack of action, prejudiced him. Further, prejudice is not otherwise apparent. I recommend rejecting Petitioner's remaining 31 complaints without analyzing whether Petitioner demonstrated that Mr. Hotchkiss committed error because, even if he did, Petitioner has failed to establish that these alleged errors prejudiced him. His conclusory allegations are not enough to satisfy his burden to establish ineffective assistance of counsel. *See Hall*, 746 F. App'x at 776 ("[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.").

For these reasons, I recommend denying relief on all grounds presented in Ground Eight.

### 9. Evidentiary Hearing

Where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also United Sates v. Lopez*, 100 F.3d 113, 120-21 (10th Cir. 1996); 28 U.S.C. § 2255(b). Additionally, "general conclusory allegations of ineffective assistance of counsel impose no obligation on the district court to conduct an evidentiary hearing." *Hall*, 746 F. App'x at 776. For the reasons discussed above, the record is sufficient to dispose of each of Petitioner's allegations of ineffective assistance of counsel and his general conclusory allegations do not warrant a hearing. Therefore, I do not recommend that an evidentiary hearing be held.

### 10. Motion to Supplement

Fourteen months after filing his initial Motion to Vacate, and almost four months after filing his untimely reply, Petitioner filed a motion requesting to supplement his reply. CV Doc. 15. Petitioner seeks to supplement his reply with "documented materials," case law, statutes, and copies of interviews that support the arguments made in his reply. *Id.* I recommend denying the untimely motion to supplement. Petitioner cannot continue to file additional documents at any time he chooses. Petitioner has had over a year since filing his Petition to move to supplement and has already filed a 56-page reply. The Court also gave Petitioner a chance to present an amended motion to the vacate to the Court for review, CV Doc. 10, which Petitioner did not do, CV Docs. 11, 13.

Additionally, in the middle of his Motion to Vacate, Petitioner includes a Motion for Continuance, asking for "more time to prepare his case" because he did not have access to the court documents he would like. Because I recommend considering his untimely reply, I also recommend denying as moot Petitioner's request for a continuance, as he had over five months from the time the government filed its answer to prepare his reply.

Finally, on June 12, 2020, Petitioner filed a notice listing errors and corrections to be made to his reply. CV Doc. 14. I have reviewed the corrections and find that none impact the analysis listed above.

### 11. Certificate of appealability

Finally, I consider whether Petitioner is entitled to a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B) (providing no appeal may be taken from a "final order in a proceeding under section 2255" unless the petitioner first obtains a certificate of appealability). A certificate of appealability may issue only if Petitioner "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). As discussed in this Proposed Finding and Recommended Disposition, I recommend finding that Petitioner has failed to make the requisite showing of a denial of a constitutional right. I therefore recommend not issuing a certificate of appealability.

## CONCLUSION

For the above-stated reasons, I recommend the following:

1. Consider Petitioner's untimely reply and deny his request for continuance as moot;

2. Deny Petitioner's Motion to Supplement (CV Doc. 15);

3. Deny relief on all eights grounds of Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 157), without the need to hold an evidentiary hearing, and dismiss this case; and

4. Decline to issue a certificate of appealability because Petitioner has not made a substantial slowing of the denial of a constitutional right.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**